UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Darrell M. Wimberly, | |
| Plaintiff, | No. 1:23-CV-02002 |
| v. | Judge Edmond E. Chang |
| David Gomez, Dr. Marlene Henze, Rob Jeffreys, and Wexford Health Sources, Inc., | |
| Defendants. | |

MEMORANDUM OPINION AND ORDER

Darrell Wimberly is incarcerated in Illinois state prison and alleges that he has been asthmatic since birth. R. 87-1, Pl.'s Resp. to DSOF ¶¶ 1, 5;[1] R. 75-2, Compl. at 2, 4. He has sued several prison officials, alleging that they were deliberately indifferent to his serious medical needs and that they intentionally inflicted emotional distress by limiting his access to a rescue inhaler. Compl. ¶¶ 1–39.[2] The Defendants now argue that Wimberly failed to exhaust his administrative remedies, as required by the Prison Litigation Reform Act, 42 U.S.C. § 1997e(a), so they move for summary judgment. R. 75, Defs.' Mot.[3] Because Wimberly's administrative remedies were

---

[1]Citations to the record are "R." followed by the docket entry number and, if needed, a page or paragraph number.

[2]This Court has subject matter jurisdiction over the federal claims under 28 U.S.C. § 1331, and supplemental jurisdiction over the state law claim under 28 U.S.C. § 1367(a).

[3]The motion initially was filed by only Wexford Health Sources, Inc., and Dr. Marlene Henze, but David Gomez and Rob Jeffreys joined the motion shortly after. R. 76, Defs.' Stipulation.

unavailable and because he nevertheless properly exhausted any available remedies, the Defendants' motion is denied. Indeed, the Court proposes (as explained later in this Opinion) to enter summary judgment for Wimberly against the exhaustion defense.

## I. Legal Standard

Summary judgment must be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In evaluating summary judgment motions, courts must view the facts and draw reasonable inferences in the light most favorable to the party against whom summary judgment was entered. *Vaughn v. Walthall*, 968 F.3d 814, 818 (7th Cir. 2020). The Court may not weigh conflicting evidence or make credibility determinations, *Omnicare, Inc. v. UnitedHealth Grp., Inc.*, 629 F.3d 697, 704 (7th Cir. 2011), and must consider only evidence that can "be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2). The party seeking summary judgment has the initial burden of showing that there is no genuine dispute and that they are entitled to judgment as a matter of law. *Carmichael v. Village of Palatine*, 605 F.3d 451, 460 (7th Cir. 2010); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Wheeler v. Lawson*, 539 F.3d 629, 634 (7th Cir. 2008). If this burden is met, the adverse party must then "set forth

specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256.

District courts ordinarily should not enter summary judgment in favor of a non-moving party. *See Goldstein v. Fid. & Guar. Ins. Underwriters, Inc.*, 86 F.3d 749, 751 (7th Cir. 1996) ("[T]he procedure warrants special caution." (cleaned up)).[4] Courts, however, may do so "[a]fter giving notice and a reasonable time to respond" under Civil Rule 56(f). A party who moves for summary judgment is on notice that "summary judgment [is] under active consideration." *See Jones v. Union Pac. R.R. Co.*, 302 F.3d 735, 740 (7th Cir. 2002). And where there is no genuine dispute of material fact and resolution of the motion for summary judgment instead turns on a question of law, entry of summary judgment may be appropriate for the non-movant. *Goldstein*, 86 F.3d at 751.

## II. Background

Because the Court proposes entering summary judgment for Wimberly, the Court recounts the evidence in the light most favorable to the Defendants. *Vaughn*, 968 F.3d at 818.[5] Wimberly, who says that he has been asthmatic since birth, complained about difficulty breathing while incarcerated at Stateville Correctional

---

[4]This Opinion uses (cleaned up) to indicate that internal quotation marks, alterations, and citations have been omitted from quotations. *See* Jack Metzler, *Cleaning Up Quotations*, 18 Journal of Appellate Practice and Process 143 (2017).

[5]Because the Court proposes to enter summary judgment in Wimberly's favor on exhaustion, the Court cites to the Defendants' version of the facts where the parties disagree about the interpretation of record evidence. The Court otherwise refers to Wimberly's response to those facts to reflect where the parties agree on the facts.

3

Center. Pl.'s Resp. to DSOF ¶¶ 1, 5–6; Compl. ¶ 1; R. 75-7, Wimberly Dep. at 9:9–:13. "[O]ver a period of years," Wimberly alleges that he informed prison officials that he had breathing problems and was told in response that he was entitled to one rescue inhaler every three (or sometimes six) months. Pl.'s Resp. to DSOF ¶¶ 6, 8; Compl. ¶¶ 2–6.

On December 29, 2020, Wimberly filed a grievance in which he described his breathing problems. Pl.'s Resp. to DSOF ¶ 17; Compl., Exh. 1. Wimberly attested that he initially submitted the grievance as an emergency, R. 75-1, DSOF ¶ 17; Compl. ¶ 14; Wimberly Dep. at 22:5–24:11, and after it was returned to him as a non-emergency, he re-submitted the grievance on January 6, 2021, DSOF ¶ 17; Compl. ¶ 21; Wimberly Dep. at 25:22–27:10. In the grievance, Wimberly alleged that "for many years," he experienced pain and suffering because he "was not given [his] rescue inhaler." DSOF ¶ 6; Compl., Exh. 1. He asserted that "medical staff" would tell him that he could obtain a rescue inhaler only once every three (or sometimes six) months, so he had to resort to using other prisoners' inhalers in times of need. DSOF ¶¶ 6, 8; Compl., Exh. 1. He concluded by explaining that this issue was "ongoing" and "continuous[]" and that "at least 95%" of nurses had informed him of the same limitations on his inhalers. Pl.'s Resp. to DSOF ¶ 6; Compl., Exh. 1.

Around three weeks later, Wimberly's grievance—assigned number 57—was forwarded to the health care unit, specifically on January 28, 2021. DSOF ¶ 24; R. 75-5, Counseling Summary at 10. From there, it remained unresolved until the next *year* when a nurse, on February 5, 2022, reviewed the grievance and denied it because

4

Wimberly did not specify when he ran out of inhalers, because he was expected to request refills, and because he should call a technician if he experienced respiratory distress. DSOF ¶ 28; Compl., Exhs. 2–3. The grievance officer reviewed the nurse's comments that same day and recommended to the Chief Administrative Officer (usually wardens or their designees) that Wimberly's grievance be denied as moot. DSOF ¶ 29; Compl., Exhs. 2–3. Around four weeks later, on March 9, the Chief Administrative Officer reviewed the grievance officer's recommendation but did not expressly note agreement or disagreement with the recommendation; instead, the Chief Administrative Officer returned the grievance to Wimberly. DSOF ¶ 29; R. 75-6, Grievance History at 13. Wimberly then appealed on April 2, 2022, to the Administrative Review Board, which received his appeal on April 5. DSOF ¶¶ 30, 44; Grievance History at 13. The Board returned his grievance one week later, on April 12, for failing to comply with the procedural requirement in § 504.810 of the Illinois Administrative Code that he cite the dates of incidents. DSOF ¶ 30; Grievance History at 12.

Wimberly filed this lawsuit in March 2023. Compl. Among his theories of liability, Wimberly sought to hold Wexford Health Sources, Inc. (the private company under contract with the State to provide medical care in prisons) liable for having a policy of understaffing Stateville's medical unit. *Id.* ¶¶ 31–39. He also sued Stateville's warden, Stateville's medical director, and the Director of the Illinois Department of Corrections. *Id.* at 2. In moving for summary judgment, the Defendants contend that Wimberly failed to exhaust his administrative remedies because grievance number 57 lacked the requisite detail and was thus properly rejected by the

5

Administrative Review Board as procedurally deficient. Defs.' Mot. at 8–13. They also contend that Wimberly's grievance failed to put Wexford on notice that there was a policy problem. *Id.* at 13–14.

### III. Analysis

### A. Exhaustion of Remedies

The Prison Litigation Reform Act prohibits prisoners and detainees from filing suit in federal court to challenge prison or jail conditions "until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Unless the issue of exhaustion is "intertwined with the merits of a claim that falls under the Seventh Amendment," *Perttu v. Richards*, 605 U.S. 460, 468 (2025), it is a threshold issue when contested. *Pavey v. Conley*, 544 F.3d 739, 742 (7th Cir. 2008), *abrogated on other grounds by*, *Perttu*, 605 U.S. at 468, 475. Because exhaustion is an affirmative defense, the Defendants have the burden of proving that Wimberly failed to exhaust his administrative remedies. *Reid v. Balota*, 962 F.3d 325, 329 (7th Cir. 2020).

To exhaust administrative remedies, "a prisoner must file complaints and appeals in the place, and at the time, the prison's administrative rules require." *Lockett v. Bonson*, 937 F.3d 1016, 1025 (7th Cir. 2019) (cleaned up). In other words, the Act "requires proper exhaustion." *Woodford v. Ngo*, 548 U.S. 81, 93 (2006). Prisoners must meet appropriate deadlines and follow "other critical procedural rules." *Id.* at 90–91. But a statutory exception to the exhaustion requirement applies if administrative remedies are not "available." *Ross v. Blake*, 578 U.S. 632, 639 (2016).

6

Broadly speaking, there are at least three categories of circumstances when a prison's administrative remedies are not "available" under the Act. *Ross*, 578 U.S. at 643–44. First, if an administrative procedure "operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates"— then it is not available to prisoners. *Id.* Second, if administrative rules are so opaque or confusing that "no reasonable prisoner can use them," then they are not considered available. *Id.* at 643–44 (cleaned up). For vagueness to render a remedy unavailable, however, genuine murkiness is required; if administrative rules simply have multiple reasonable interpretations, then "Congress has determined that the inmate should err on the side of exhaustion." *Id.* at 644. Third, if prison administrators or staff "thwart inmates from taking advantage of a grievance process," then the process is not available. *Id.* This can happen through "affirmative misconduct," such as refusing to provide or respond to grievance forms or threatening prisoners with negative consequences for grieving. *Hernandez v. Dart*, 814 F.3d 836, 842 (7th Cir. 2016); *see also Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006) (holding that administrative remedies are unavailable if prison officials "do not respond to a properly filed grievance"). Administrators can also relegate a remedy into the depths of unavailability by simply failing to inform prisoners of grievance processes, leaving prisoners ignorant of the remedy. *Hernandez*, 814 F.3d at 842.

Because the grievance procedures are defined by state law, *Maddox v. Love*, 655 F.3d 709, 721 (7th Cir. 2011), the Court turns to the relevant portions of the Illinois Administrative Code. Illinois requires that grievances "contain factual details

7

regarding each aspect of the offender's complaint, including what happened, when, where and the name of each person who is the subject of or who is otherwise involved in the complaint." Ill. Admin. Code tit. 20, § 504.810(c). If prisoners do not know the names of the officials who engaged in the misconduct, then they may still properly file a grievance by including "as much descriptive information about the individual as possible." *Id.* Prisoners must file their grievances "with the counselor or Grievance Officer," *id.* § 504.810(a), who then must submit their findings and recommendations to the Chief Administrative Officer "within two months after receipt of the written grievance, when reasonably feasible under the circumstances," *id.* § 504.830(e). If a prisoner believes that a problem remains, then the prisoner may appeal to the Director of the Illinois Department of Corrections, at which point the Administrative Review Board will submit its findings and recommendations to the Director who makes a final decision. *Id.* § 504.850(a), (d)–(e).

## B. Grievance 57

The Defendants first argue that Wimberly failed to follow proper administrative-remedies procedure and thus failed to exhaust his administrative remedies. Def.'s Mot. at 8–13. Wimberly makes two principal arguments in response: (1) his administrative remedies were unavailable because no one responded to his grievance for over a year; and (2) he nevertheless followed proper procedure and thus successfully exhausted. R. 87, Pl.'s Resp. at 4–8.

The Court agrees that, based on the record evidence, Wimberly's administrative remedies were unavailable. Indeed, even viewing the evidence in the *Defendants'*

8

favor (not Wimberly's), the only reasonable conclusion is that the remedies were unavailable. Illinois sets out a two-month deadline by which grievance officers should have "consider[ed] the grievance and report[ed] … findings and recommendations in writing to the Chief Administrative Officer … when reasonably feasible under the circumstances." Ill. Admin. Code tit. 20, § 504.830(e). Of course, the failure to review a grievance by an "aspiration[al]" deadline does not *itself* render a prisoner's administrative remedies unavailable. *See Ford v. Johnson*, 362 F.3d 395, 400 (7th Cir. 2004) ("An aspiration to act quickly whenever possible does not mean that the prison system tosses out the papers and closes the files after two months." (cleaned up)). And prison officials justifiably take longer to resolve "more complex" grievances. *Id.* But where a prisoner instead has "no reason to believe that anyone was looking into his grievance," administrative remedies are indeed unavailable. *Reid*, 962 F.3d at 331. So when "prison employees do not respond to a properly filed grievance … the prisoner is considered to have exhausted his administrative remedies." *Pyles v. Nwaobasi*, 829 F.3d 860, 864 (7th Cir. 2016) (cleaned up).[6]

---

[6]The Defendants suggest that Wimberly failed to properly file his grievance because he noted on his grievance form that his issue was both an emergency and a non-emergency. Defs.' Mot. at 8–10. The Defendants also acknowledge, however, that Wimberly provided an explanation for why he marked both designations. *Id.* at 3; DSOF ¶ 17; Compl. ¶ 21; Wimberly Dep. at 25:22–27:10. In any event, the fact that Wimberly marked his grievance as both an emergency and non-emergency was not a procedural shortcoming that officials cited when rejecting his grievance, so the Defendants cannot now rely on that argument in contending that Wimberly failed to exhaust. *Conyers v. Abitz*, 416 F.3d 580, 585 (7th Cir. 2005) ("[A] procedural shortcoming … amounts to a failure to exhaust only if prison administrators explicitly relied on that shortcoming.").

Wimberly waited *13 months* for his grievance to be reviewed: he submitted his corrected, non-emergency grievance on January 6, 2021, and a grievance officer did not review it until February 5, 2022. DSOF ¶¶ 17, 23, 28–29; Compl. ¶¶ 14, 21; Wimberly Dep. at 25:22–27:10; Grievance History at 13. And the Defendants do not suggest that they returned the grievance to him until after the Chief Administrative Officer reviewed the grievance officer's decision a month later. *See* Pl.'s Resp. to DSOF ¶ 19; Compl., Exhs. 2–3. The Defendants do not explain why they took more than one year to respond to Wimberly's grievance, particularly where they now contend that the reason for denying it—failure to include dates and thus failure to comply with a procedural requirement—was supposedly simple and evident from the face of the grievance. Wimberly's administrative remedies thus were unavailable.

Of course, prison officials did eventually respond to Wimberly's grievance before he filed the lawsuit. Their eventual response, however, does not mean that Wimberly's administrative remedies—once unavailable—became available again. There are three reasons why. First, allowing prison officials to make unavailable remedies available again—after the fact—would impermissibly impose an extra requirement not found in the statute. Administrative remedies "become unavailable" if prison officials fail to respond. *Lewis v. Washington*, 300 F.3d 829, 833 (7th Cir. 2002) (cleaned up). And "[i]f administrative remedies are genuinely unavailable," then "the prisoner [has] satisfied the exhaustion requirement." *Jackson v. Esser*, 105 F.4th 948, 957 (7th Cir. 2024). That is all that is required: prisoners are not required to "go beyond the established system" to exhaust. *Williams v. Wexford Health Sources, Inc.*, 957 F.3d

10

828, 833–34 (7th Cir. 2020); *see also Fordley v. Lizarraga*, 18 F.4th 344, 355 (9th Cir. 2021) (observing that "once an administrative remedy is exhausted, a claimant need not do more" because "over-exhaustion is not required" (cleaned up)).

Second, allowing unavailable administrative remedies to somehow become available again would force a prisoner to play an unworkable guessing game. "Prison officials cannot defeat a prisoner's suit after hiding existing remedies by the simple expedient of saying that they would have forgiven the procedural noncompliance." *Ramirez v. Young*, 906 F.3d 530, 539 (7th Cir. 2018). Nor can "prison officials … exploit the exhaustion requirement through indefinite delay in responding to grievances." *Lewis*, 300 F.3d at 833 (cleaned up). Wimberly's case is no different: the Defendants cannot argue that, after failing to respond to his grievance for over one year without justification, Wimberly's administrative remedies remained available.

Third, as a practical matter, allowing administrative remedies to become available again would encourage prisoners to race to the courthouse—the exact opposite of the goal of creating an exhaustion requirement. If Wimberly had filed suit before he received the Chief Administrative Officer's March 9, 2022, response, then he would have a very strong argument that his administrative remedies were unavailable. He should not be *worse* off because he waited for prison officials to respond, affording them additional time to potentially remedy the issue described in his grievance, before he filed suit in federal court. At bottom, it was the prison officials' delay in responding that caused Wimberly's administrative remedies to become unavailable, so Wimberly cannot be said to have failed to exhaust. *See Dole*, 438 F.3d at 811.

11

Even if Wimberly's administrative remedies were available, he exhausted them. The Defendants disagree, contending that Wimberly failed to include the date (or dates) of the incident, which they believe is required by the Illinois Administrative Code. Defs.' Mot. at 9, 11–12. But the Administrative Code does not strictly require dates. Instead, the Code requires "factual details regarding … what happened, when, where and the name of each person who is the subject of or who is otherwise involved in the complaint." Ill. Admin. Code tit. 20, § 504.810(c). In the grievance, Wimberly explained the "when": his inadequate access to his inhaler was a "continuous[]" and "ongoing" issue that has affected him "for many years." Pl.'s Resp. to DSOF ¶ 6; Compl., Exh. 1. Because Wimberly's grievance identified an ongoing issue, his omission of any specific date does not mean that he failed to comply with procedural requirements. *Cf. Turley v. Rednour*, 729 F.3d 645, 650 (7th Cir. 2013) (rejecting requirement for every date of specific incidents when challenge was about "continuing violation").

Next, the Defendants contend that Wimberly's grievance failed to put Wexford on notice that it could be liable. Defs.' Mot. at 13–14. But Wimberly grieved an ongoing issue that he encountered with "at least 95%" of the prison's nurses. Pl.'s Resp. to DSOF ¶ 6; Compl., Exh. 1. The grievance thus asserted the kind of systemic issue that would give Wexford notice of the alleged gap in medical care, *see Dean v. Wexford Health Sources, Inc.*, 18 F.4th 214, 235 (7th Cir. 2021); indeed, the prison forwarded his grievance to the health care unit generally, DSOF ¶ 24; Counseling Summary at 10.

Finally, the Defendants argue that Wimberly's grievance failed to put the individual defendants on notice. R. 96, Defs.' Reply at 2–4. But the Defendants devoted at most two cursory sentences to this issue in their principal brief, so it is waived. *Weinstein v. Schwartz*, 422 F.3d 476, 477 n.1 (7th Cir. 2005) ("The failure to develop an argument constitutes a waiver."). And prison officials did not reject Wimberly's grievance for failing to name specific individuals, so the Defendants cannot now rely on that basis to argue that Wimberly failed to exhaust. *Conyers*, 416 F.3d at 585. In any event, "it belies reason" for the Defendants to suggest that Wimberly's grievance about a systemic medical issue left Stateville's medical director and warden "unaware of who was responsible for that decision." *Maddox*, 655 F.3d at 722.

## IV. Conclusion

In light of the record evidence, the Court denies the Defendants' motion for summary judgment, R. 75. As explained in the Opinion, even if the evidence is viewed in the *Defendants'* favor and even if the Defendants were given the benefit of reasonable inferences, Wimberly's administrative remedies were unavailable, and his grievance 57 otherwise sufficed to exhaust any available administrative remedies. The Court thus enters summary judgment against the exhaustion defense and for Wimberly, and the case is ready to move on. If the Defendants believe that there is a way to resist summary judgment in light of this Opinion, then they may file a position statement explaining why judgment should not be entered against exhaustion, and the Court will consider the argument anew rather than as if it were a reconsideration

13

motion (the Defendants have already preserved the argument that they were entitled to summary judgment). The position statement, if filed, is due on December 1, 2025.

It appears that some merits-related discovery remains to be completed. R. 101, 09/16/25 Joint Status Report at 2. Discovery should continue on the merits of Wimberly's claims, and discovery supervision remains referred to the magistrate judge.

ENTERED:

s/Edmond E. Chang
Honorable Edmond E. Chang
United States District Judge

DATE: November 14, 2025